**Clifford DAVIS, Appellant,**

v.

**Robert F. PARRATT, Warden, Appellee.**

No. 81–1698.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1981.

Decided Jan. 19, 1982.

Certiorari Denied May 17, 1982.

See 102 S.Ct. 2249.

Paul L. Douglas, Atty. Gen., Sharon M. Lindgren, Asst. Atty. Gen., argued, Lincoln, Neb., for appellee.

Steven E. Guenzel, argued, of Barlow, Johnson, DeMars & Flodman, Lincoln, Neb., for appellant.

Before ROSS and STEPHENSON, Circuit Judges, and HOWARD,* District Judge.

STEPHENSON, Circuit Judge.

Appellant Clifford Davis seeks habeas corpus relief pursuant to 28 U.S.C. § 2254.

---

Davis was convicted of possession of controlled substances as a result of a search of his apartment. Davis' principal contention is that the Nebraska state court abused its discretion by refusing to grant a continuance to allow Davis to produce the testimony of James Washington and that this action materially prejudiced the appellant. The district court [1] agreed that the continuance should have been granted but held that this decision had not materially prejudiced Davis and thus denied the habeas petition. We affirm.

In 1976, Davis was convicted of unlawful possession with intent to deliver a controlled substance (heroin) and of illegal possession of a controlled substance (phencyclidine), among other offenses. See State v. Davis, 199 Neb. 165, 256 N.W.2d 678, 679 (1977). The state's case against Davis consisted primarily of evidence found in the petitioner's apartment during a search of the premises. This search was conducted under the authority of a warrant which was issued on the basis of information provided by a confidential informant.

Davis' defense at trial was that he was the victim of a conspiracy conducted by the Omaha police force and that the controlled substances had been "planted" in his apartment. See State v. Davis, 203 Neb. 284, 278 N.W.2d 351, 353 (1979). Prior to trial, Davis' attorney attempted to discover the name of the confidential informant used to procure the search warrant. On December 23, 1975, six working days prior to trial, the state orally informed the petitioner's counsel that the informant was one James Washington. Although the state knew that Washington was at that time in jail in San Francisco, Washington's location was not given to the defense counsel.[2]

By December 25, Davis' counsel, Ivory Griggs, had learned through independent means the whereabouts of Washington. Griggs spoke by phone with Washington that day. Washington supported Davis' defense. Washington said he knew of Davis but could not identify him, that he had not been in Davis' apartment and that he was the confidential informant. Washington was hesitant to testify, however.

Griggs again spoke with Washington on Friday, January 2. Griggs had another lawyer from the public defender's office, Thomas Riley, listen to the conversation. In this phone call Washington again supported Davis' defense. Washington said that the drugs were planted in Davis' apartment, that he had merely notified the Omaha police when the drugs were planted and that he would be willing to testify if given the opportunity. Washington also said that he had a tape recording of a conversation between two vice squad officers which would support his story.

On January 5, the day the trial was scheduled to begin, Davis' counsel filed a motion for a continuance supported by affidavits from Griggs and Riley concerning the phone conversation with Washington. The motion was denied and, as noted, Davis was convicted. During the trial, defense counsel attempted to have Riley testify about Washington's statements during the January 2nd phone conversation but this evidence was not admitted. The conviction

---

generally J. Calamari & J. Perillo, The Law of Contracts § 22–5 et seq. (2d ed. 1977).

* The Honorable George Howard, Jr., United States District Judge for the Western District of Arkansas, sitting by designation.

1. The Honorable Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska.

2. After conducting an evidentiary hearing, Judge Urbom found that during the state court suppression hearing the state indicated that Washington was in San Francisco and that the state was attempting to extradite him in connection with a charge against Washington of attempted murder. Washington, because he feared for his life should he be returned to Nebraska, was resisting the extradition attempt.

was affirmed on appeal. *State v. Davis, supra,* 256 N.W.2d at 681 (affirming the conviction but setting aside "habitual criminal" sentence). Davis' action for post-conviction relief was denied and this decision was affirmed on appeal. *State v. Davis, supra,* 278 N.W.2d at 354–55. This habeas petition in federal district court followed.

The district court, after holding an evidentiary hearing, concluded that it was an abuse of discretion for the Nebraska trial court to refuse to grant a continuance in order that Washington's deposition could have been taken. However, Judge Urbom held that this abuse of discretion had not prejudiced the defendant. *See United States v. Smith,* 591 F.2d 1105, 1110 (5th Cir. 1979). The district court concluded:

Great uncertainty surrounds the question of what James Washington would have testified to if he had come personally to the trial or had testified by deposition. We have only his oral statements to Mr. Griggs and Mr. Riley—to the effect that he, Washington, had never been to the petitioner's apartment but that the controlled substances found there were planted. Whether there was sufficient foundation to show he could have known that something was done at a time when he was not present at a place he had never been to is problematic, and those problems are not answered by the telephone conversations. What we do not yet have is Washington's testimony under oath as to anything.

The lack of Washington's testimony is significant and largely unexplained. He did not testify at the trial, to be sure, and that may have been because of the trial judge's abuse of discretion. On the other hand, he did not testify at the post-conviction hearing in the state court; the record is silent as to why not. He did not testify at the evidentiary hearing in this court; the record is also silent as to why not. No request for a subpoena or the taking of a deposition or use of any other technique to get his testimony before this court was requested, and no indication has been made that his testimony could not be obtained. It is not unfair to say

that in light of two unexplained failures to testify since the petitioner's original trial, it is not probable that Washington would have testified favorably to the petitioner at his criminal trial. This is particularly true in the case of the failure to testify in this court, because the Supreme Court of Nebraska in its opinion in the post-conviction proceeding specifically noted that "Davis made no effort to support his claim in the post conviction action by deposition testimony of Washington." 203 Neb. at 290, 278 N.W.2d 351.

I therefore hold that there has been no prejudice arising from the trial judge's failure to allow the petitioner time in which to obtain James Washington's testimony. For all that can be told from the record the trial judge could have continued the case for five years—until today— and the testimony of James Washington still would not have been produced.

*Davis v. Parratt,* No. CV79–L–128, slip op. at 9 (D.Neb. Dec. 31, 1980).

On January 9, 1981, the petitioner filed a motion to alter or amend the judgment of December 31, 1980. Judge Urbom denied the motion to alter or amend the judgment but granted petitioner's motion for a new trial for the limited purpose of showing that petitioner was prejudiced by the trial judge's refusal to grant a continuance. In conjunction with the limited new trial order, the court later granted petitioner's motion for leave to take the deposition of Washington. In a later order, petitioner was given until May 1, 1981, to take the deposition or to submit an affidavit of Washington and if petitioner failed to obtain either an affidavit or a deposition then habeas relief would be denied.

On May 1, 1981, a second motion to alter or amend judgment or for additional time to take the deposition was filed since petitioner had been unsuccessful in obtaining either a deposition or an affidavit from Washington. This motion gave the details of the petitioner's counsel's attempt to obtain a sworn statement from Washington

after the federal habeas petition was filed. Davis' counsel had located Washington and by telephone the missing witness repeated his earlier statements concerning the alleged conspiracy to convict Davis. Washington was a resident of the Gateways Community Treatment Center in Los Angeles, California, at the time of this conversation. Over a four-month period following this most recent contact with Washington, counsel for the petitioner attempted to get a sworn statement from Washington. This effort was unsuccessful. Washington was at times in hiding and at other times unwilling to talk. The affidavit attached to the motion to alter or amend indicated that affiant had been told by Washington's parole officer from Denver that Washington had avoided conviction on several criminal charges because Washington had been declared legally insane and that his competence as a witness was seriously in question. However, after spending time in an institution, he was declared legally sane. Petitioner sought additional time in which to take the deposition of Washington.

The district court denied Davis' second motion to alter or amend or for additional time. Among other things, the court observed that:

> [T]hose affidavits do not convince me that had the trial court continued the trial, Washington's testimony would have been produced. The inability of the petitioner's current counsel, despite diligent efforts, to obtain even so much as a sworn statement from Washington affirms my earlier conclusion that the trial judge could have "continued the case for five years—until today—and the testimony of James Washington still would not have been produced."

*Davis v. Parratt*, No. CV79–L–128, slip op. at 2 (D.Neb. June 12, 1981).

Davis relies primarily on *Singleton v. Lefkowitz*, 583 F.2d 618 (2d Cir. 1978), *cert. denied*, 440 U.S. 929, 99 S.Ct. 1266, 59 L.Ed.2d 486 (1979). The district court factually distinguished *Singleton* on the grounds that the court had a sworn statement made by the missing witness and be-

cause the prosecution had contributed to the unavailability of the witness in *Singleton*.

We are satisfied from our examination of the record that the findings of the district court are not clearly erroneous and that no error of law appears.

Affirmed.