**STATE of Minnesota, Respondent,**

**v.**

**James Paul SECORD, Appellant.**

**No. CX–99–1721.**

Court of Appeals of Minnesota.

June 20, 2000.

Review Denied Sept. 13, 2000.

Mike Hatch, Attorney General, St. Paul; and Amy Klobuchar, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, for respondent.

John A. Fabian, Diane M. Odeen, Nichols Kaster & Anderson, Minneapolis, for appellant.

Considered and decided by SCHUMACHER, Presiding Judge, HARTEN, Judge, and SHUMAKER, Judge.

## OPINION

SCHUMACHER, Judge.

After his conviction of gross misdemeanor possession of child pornography, James Paul Secord appeals the district court's refusal to suppress material seized from his residence pursuant to a search warrant. We reverse.

## FACTS

On October 22, 1998, Secord took his car to a Firestone garage for servicing. While the car was being inspected and repaired, a Firestone mechanic, Gary Voit, noticed that one of the taillights was not working. Voit called Secord for permission to fix the light, and Secord agreed. To fix the taillight, Voit opened the car's hatchback and saw what he thought was a box of child pornography videotapes, as well as some soft-cover child pornography books. Voit showed his manager, Randy Petersen, and another employee, Timothy Hanlin, what he had found. They did not remove any of the materials from the car. Secord picked up his car later that afternoon.

On October 28, 1998, Sergeant Bernie Martinson of the Sex Crimes Unit of the Minneapolis Police Department received a phone call from a Hennepin County proba-tion officer. The probation officer told Martinson that a friend who worked at the Firestone garage had told him about suspected child pornography in Secord's car. That same day, Martinson called the garage and talked to Peterson, who told him that while servicing Secord's car, several employees saw what they thought was child pornography in the car. Martinson also spoke with Hanlin, who gave a description of Secord and his clothes.

Based on this information, Martinson applied for and received a search warrant to search Secord's car and residence. Martinson executed the search warrant on October 29, 1998. He seized the box of videotapes and the soft-cover books from Secord's car. Although some of the videotape titles suggested that they might be child pornography, none of them contained child pornography or photographic representations of sexual conduct involving minors within the meaning of the relevant statutes. The soft-cover books were not pornographic.

Martinson and another investigator also searched Secord's residence, where they seized pornographic tapes and magazines that did not contain child pornography or photographic representations of sexual conduct involving minors within the meaning of the relevant statutes. But Secord told the officers that he had used his computer to download "pictures of juveniles posing in sexual positions and having sex with adults." The officers seized the pictures.

Secord moved to suppress the materials seized from his residence on the grounds that the warrant was not supported by probable cause, did not establish a sufficient nexus to his residence to support a search of the residence, and contained misrepresentations. Although the district court found that the affidavit's uses of the word "pedophiles" were misrepresentations because there was no evidence to suggest that Secord was a pedophile, the court found that even disregarding those sections of the affidavit, the remaining por-

229

tions established probable cause to search both Secord's car and his residence.[1]

Secord's motion to suppress the evidence seized at his residence was denied. He submitted to a bench trial on stipulated facts and was found guilty. He was sentenced to 365 days in the county correctional facility, with the sentence stayed pending compliance with certain terms of probation. He now appeals the district court's refusal to suppress the material seized at his residence pursuant to the search warrant.

## ISSUE

Did the district court err in determining the warrant was supported by probable cause and thus refusing to suppress the evidence seized from Secord's residence?

## ANALYSIS

Both the United States and Minnesota Constitutions protect citizens from unreasonable searches and seizures. *See* U.S. Const. amend. IV; Minn. Const. art. I, § 10. The court's task on appeal is to "ensure that the issuing judge had a 'substantial basis' for concluding that probable cause existed." *State v. Souto*, 578 N.W.2d 744, 747 (Minn.1998) (citation omitted). To determine whether the district court had a substantial basis for finding probable cause, we look to the "totality of the circumstances." *State v. Wiley*, 366 N.W.2d 265, 268 (Minn.1985). Under this test, the

> issuing judge "is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contra-

band or evidence of a crime will be found in a particular place."

*State v. Zanter*, 535 N.W.2d 624, 633 (Minn.1995) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). In determining whether probable cause exists, both the district court and the reviewing court may consider only the information in the application for the search warrant. *State v. Kahn*, 555 N.W.2d 15, 18 (Minn.App.1996). We pay "great deference" to the district court's determination of probable cause supporting a search warrant. *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331; *State v. Jannetta*, 355 N.W.2d 189, 194 (Minn.App. 1984), *review denied* (Minn. Jan. 14, 1985). *But see State v. Gabbert*, 411 N.W.2d 209, 212 (Minn.App.1987) ("deference to the magistrate * * * is not boundless") (quoting *United States v. Leon*, 468 U.S. 897, 914, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677 (1984)). Doubtful or marginal cases should be " 'largely determined by the preference to be accorded to warrants.' " *State v. Albrecht*, 465 N.W.2d 107, 109 (Minn.App.1991) (quoting *Massachusetts v. Upton*, 466 U.S. 727, 734, 104 S.Ct. 2085, 2089, 80 L.Ed.2d 721 (1984)).

Secord argues that the warrant was not supported by probable cause because the information in the supporting affidavit did not establish sufficient nexus to his residence to support a search of the residence. The only connection in the affidavit between the materials the Firestone employees saw in Secord's car and Secord's residence is Martinson's assertions that on the basis of his training and experience he knows that "pedophiles" "keep," "maintain," and "collect" such materials. But the court ruled that it would not consider those portions of the affidavit because there was no evidence to support the implied assertion that Secord was a pedo-

---

1. The affidavit supporting the application for a search warrant included the following paragraph:

   Your affiant also wishes to seize any handwritten books or diaries which will describe sexual acts with children. It is known that pedophiles will collect such data on computer discs and software, and then correspond with other known pedophiles in order to further their collection of sexual erotica.

phile. The state did not challenge this ruling by filing a notice of review, nor does it argue in its brief that Martinson's training or experience supports a nexus between the materials seen in Secord's car and Secord's residence sufficient to support a search of that residence. As a result, it may not argue that Martinson's conclusory statements based on his training ·and experience support finding probable cause for the warrant. *See City of Ramsey v. Holmberg*, 548 N.W.2d 302, 305 (Minn.App.1996) (issue decided adversely to respondent not properly before court absent notice of review), *review denied* (Minn. Aug. 6, 1996); *Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn.1982) (issues not briefed on appeal are waived).

Instead of relying on Martinson's training and experience, the state argues that reasonable inferences from the nature of the materials and surrounding circumstances support a nexus to Secord's home. Observing that the district court "is entitled to draw common-sense and reasonable inferences from the facts and circumstances" in an affidavit, *State v. Eggler*, 372 N.W.2d 12, 15 (Minn.App.1985), *review denied* (Minn. Sep. 19, 1985), the state argues that since the videotapes were likely to be used at Secord's residence, a sufficient nexus to that residence existed to support probable cause for a warrant to search the residence.

Although the question whether the district court can infer a nexus to a residence based on the inference that videotapes are likely to be used or stored at home appears to be one of first impression in Minnesota, other courts presented with the argument have rejected it:

> In this case, a magistrate could infer from the affidavit that [the defendant] would be unlikely to view or store the video tapes at his place of employment. A further possible inference was that, after removing the tapes from his workplace, [the defendant] would take the tapes home to view or store. [The defendant's] home, however, was but one

of an otherwise unlimited possible sites for viewing or storage. The [postal inspector's] affidavit provided no basis to either limit the possible sites or suggest that [the defendant's] home was more likely than the otherwise endless possibilities. As a consequence, the possible inference that [the defendant] would take the tapes home, in and of itself, is insufficient to provide a substantial basis for concluding there was probable cause to believe the contraband would be in [the defendant's] home at the time the search was to take place.

*United States v. Rowland*, 145 F.3d 1194, 1205 (10th Cir.1998). On similar facts, the Third Circuit reached the same result:

> Although it may have been reasonable for the magistrate judge to infer that [the defendant] would not view the videotape at the storage facility, there was no basis for finding that he would view it at his home as opposed to some other location.

*United States v. Loy*, 191 F.3d 360, 366 (3rd Cir.1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 1429, 146 L.Ed.2d 319 (2000).

The state, however, relies on Minnesota cases in which the absence of evidence that drug dealers kept drugs elsewhere was one factor supporting the nexus necessary for a search of their residences:

> ·No evidence suggested that appellant stored drugs in a separate place or obtained drugs from another source before making the sale to the dealer. Such indications would have weakened the inference of a nexus between the controlled buy and appellant's residence. *See Novak v. State*, 349 N.W.2d 830, 832–33 (Minn.1984) (affidavit supported inference that marijuana would be found in appellant's residence following sale that did not take place at that house, where there was no evidence that appellant stored marijuana elsewhere or obtained it from others before making sale).

*State v. Bynum*, 579 N.W.2d 485, 487 (Minn.App.1998), *review denied* (Minn. Aug. 18, 1998).

But the cases on which the state relies are distinguishable. In both *Bynum* and *Novak*, the information available to the district court included the fact that the suspects were drug dealers. In fact, the *Novak* court specifically pointed this out:

> We attach considerable significance to the information indicating that petitioner was a drug wholesaler. The fact that petitioner dealt in large quantities increased the likelihood that police would find marijuana in a search of his residence.

*Novak*, 349 N.W.2d at 832–33.

When the district court is informed that a suspect is a drug dealer, it is reasonable to infer that the suspect keeps a supply of drugs to sell. In the absence of any contrary information, it is reasonable to infer that that supply is kept at the suspect's residence. But in this case, that reasoning does not work, because there is nothing in the affidavit that indicates that Secord had more pornography anywhere, much less at his residence. Had the informants seen Secord sell pornography to someone, *Bynum* and *Novak* would arguably have been relevant. But without any facts to indicate that the pornography seen in Secord's car was part of a larger supply, there was no reasonable basis to infer that more pornography would be found at Secord's home.

The state suggests that the large quantity of pornography seen in Secord's car made it likely that more would be found at home, but does not suggest why this is so. The state also says "it is reasonable to infer that [Secord] was using the car to transport the pornography to his residence," but does not explain why that inference is any more reasonable than the inference that Secord was using the car to transport the pornography somewhere else.

Under the totality of the circumstances presented in the affidavit, we conclude the district court did not have a substantial basis to believe that child pornography would be found at Secord's residence. The warrant therefore was not properly supported by probable cause. We need not reach Secord's additional arguments.

### DECISION

The district court erred by refusing to suppress the child pornography seized from Secord's residence.

**Reversed.**